UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-3484-Dube

UNITED STATES OF AMERICA

vs.

ERNESTO FONSECA,

      Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes   X   No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes   X   No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
Michael B. Nadler
Assistant United States Attorney
Florida Bar No. 51264
JLK Federal Justice Building
99 Northeast 4th Street
Miami, Florida 33132-2111
Telephone: 305-961-9244
Facsimile: 305-530-7976
Email: michael.nadler@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>ERNESTO FONSECA,<br><br>Defendant(s) | Case No. 11-3484-Dubé |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 20, 2011__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and<br>21 U.S.C. 846 | On or about October 20, 2011, in Miami Dade-County, in the Southern District of Florida, the defendant, Ernesto FONSECA, did knowingly and intentionally attempt to possess with the intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) in violation of Title 21, United States Code; Section 846. |

This criminal complaint is based on these facts:

PLEASE SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
Complainant's signature

Daniel Summers, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: __10/21/2011__

_____
Judge's signature

City and state: __Miami, Florida__       Magistrate Judge Robert L. Dube
Printed name and title

## AFFIDAVIT

I, Daniel Summers, Special Agent with the Drug Enforcement Administration, Homestead Resident Office, Homestead, Florida, being duly sworn, depose and state the following:

1. I am currently employed as a Special Agent for the Drug Enforcement Administration (DEA) and am located at the Homestead Resident Office. I have been so employed since July 2004. I have received numerous hours of formal classroom training in the investigation of narcotics and dangerous drugs from the DEA Academy in Quantico, Virginia. I have received specialized training in the investigation of narcotics trafficking and have been involved in the investigation of drug possession, conspiracy, distribution and importation, as well as methods to finance drug transactions and launder drug proceeds.

2. This affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging Ernesto FONSECA with violating Title 21, United States Code, Sections 841 and 846. As such, this affidavit does not contain all of the facts known to me regarding this investigation. I make this affidavit based upon my own knowledge, and information and documents furnished to me in my official capacity by other officers and federal agents.

3. On October 13, 2011, your Affiant arrested Fidel Gonzalez for possession with intent to distribute approximately 477 grams of a substance which field tested positive for the presence of methamphetamine. Following his arrest, Gonzalez waived his *Miranda* rights and admitted that he had received the methamphetamine from FONSECA earlier that morning.

1

Gonzalez further admitted that he had agreed to sell the drugs and pay $18,000 to FONSECA. Gonzalez agreed to assist DEA agents in their investigation of FONSECA.

4. During this investigation, Gonzalez told agents that he and FONSECA frequently referred to crystal methamphetamine as either "the niño" or "the tire." On October 13, 2011, during a recorded and consensually monitored conversation, Gonzalez told FONSECA that he had been arrested for speeding and that his vehicle had been impounded. Gonzales further told FONSECA that the "niño," referring to the 477 grams of crystal methamphetamine, had not been discovered by the police and was still in the car.

5. On October 14, 2011, Gonzalez again telephoned FONSECA and told him that his car would remain impounded until October 17, 2011, and that he needed money to spring his car from the impound lot. On October 17, 2011, agents watched Gonzalez and FONSECA meet in a Publix parking lot. Using an audio transmitting device, agents overheard FONSECA ask Gonzalez "Why were you speeding with that in your car?" Gonzalez made arrangements with FONSECA to deliver the crystal methamphetamine after Gonzalez picked up his vehicle from the impound lot.

6. Approximately one hour later, Gonzalez telephoned FONSECA and told him "the 'tire' was there just like I left it." FONSECA asked "So I can call those guys and tell them it's OK?" Gonzalez then asked FONSECA if he still wanted Gonzalez to sell it. FONSECA told Gonzalez to go home, and he would see him there later.

7. On October 19, 2011, Gonzalez returned a telephone call to FONSECA. FONSECA told Gonzalez that he had talked to "his people," and it would be okay for him to

pick "it" up the following day. Gonzalez arranged to meet FONSECA at a relative's house the following morning in order to give FONSECA the crystal methamphetamine.

8. On October 20, 2011, agents set up surveillance in anticipation of the meeting with FONSECA. Prior to the meeting, agents gave Gonzalez a package that was intended to look like the package of crystal methamphetamine that FONSECA had given to Gonzalez the previous week. Agents observed Gonzalez and FONSECA arrive at the residence, and both went inside. Shortly thereafter, agents observed Gonzalez and FONSECA walk back outside. Gonzalez removed the package resembling the original crystal methamphetamine package from the back of his vehicle. In a recorded and videotaped meeting, FONSECA asked Gonzalez, "Are there any problems?" Gonzalez said "no." FONSECA then asked, "Can you guarantee everything?" Gonzalez said "yes." FONSECA asked, "You did not open it did you? Where is it?" FONSECO said, "I have to go over there. I am going to take it with me." FONSECA then directed Gonzalez to throw the package into FONSECA's vehicle. After agents observed Gonzalez throw the package through the window of FONSECA's vehicle, they moved in and placed FONSECA under arrest.

9. After his arrest, FONSECA was read his *Miranda* warnings and agreed to waive them both verbally and in writing. In a post-*Miranda* statement, FONSECA admitted that he obtained the crystal methamphetamine from another supplier for the purpose of selling the methamphetamine for approximately $18,000. FONSECA also admitted giving crystal methamphetamine to Gonzalez sometime the previous week. Finally, FONSECA admitted that the purpose of meeting with Gonzalez on October 20, 2011, was to retrieve the crystal methamphetamine from Gonzalez.

3

Based on the foregoing facts, I respectfully submit that probable cause exists that Ernesto FONSECA did knowingly attempt to possess with intent to distribute a controlled substance, that is, a substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); in violation of 21 U.S.C. § 846.

FURTHER YOUR AFFIANT SAYETH NOT

*[signature]*
Special Agent Daniel Summers
Drug Enforcement Administration

Subscribed and Sworn to before me this **21** day of October, 2011

*[signature]*
ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

4